UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
JEFFREY PHILPOTT,

       Plaintiff,

v.

STATE OF NEW YORK, THE UNIVERSITY OF
THE STATE OF NEW YORK, and STATE
UNIVERSITY OF NEW YORK,

       Defendants.
------------------------------------------------------------ X

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

16 Civ. 6778 (AKH)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/3/17

ALVIN K. HELLERSTEIN, U.S.D.J.:

    Plaintiff Jeffery Philpott, a former Vice President of Student Affairs at SUNY's College of Optometry, brought this employment discrimination action alleging that he was discriminated against and harassed on the basis of his sexual orientation and chemical dependence. Plaintiff also alleges that his employment was terminated shortly after he complained of the discrimination. On January 27, 2017, Defendants State of New York, University of the State of New York, and State University of New York moved to dismiss the complaint on a variety of grounds. Plaintiff has since conceded that two of these defendants – the State of New York and the University of the State of the New York – are not proper defendants. Plaintiff has also withdrawn his American with Disabilities Act, 42 U.S.C. § 12112 ("ADA"), claim alleging chemical dependence discrimination. As a result, the only remaining defendant is the State University of New York ("SUNY"), and the only remaining claims are for sexual orientation discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"). In light of plaintiff's

concessions, defendant's motion now presents the following four issues: (1) whether plaintiff's sexual orientation discrimination claim is cognizable under Title VII; (2) assuming that such a claim is cognizable under Title VII, whether plaintiff has stated a plausible claim; (3) whether any of plaintiff's allegations are untimely under the applicable statute of limitations; and (4) whether plaintiff's sexual orientation discrimination claim may brought under Title VII only, and not under Title IX. For the reasons discussed herein, defendant's motion is granted in part and denied in part.

## DISCUSSION

### I. Plaintiff's Claim for Sexual Orientation Discrimination is Cognizable Under Title VII

Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge ... or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). In *Simonton v. Runyon*, 232 F.3d 33 (2d Cir. 2000), the Second Circuit held that Title VII does not prohibit discrimination on the basis of sexual orientation. In 2005, the Second Circuit reaffirmed that holding in *Dawson v. Bumble & Bumble*, 398 F.3d 211 (2d Cir. 2005). Most recently, in *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195 (2d Cir. 2017), a panel of the Second Circuit concluded that it lacked the power to reconsider those prior cases, and reaffirmed *Simonton* and *Dawson*, albeit somewhat reluctantly. The *Christiansen* court clarified that even though a claim for sexual orientation discrimination is not cognizable under Title VII, a "claim based on the gender stereotyping theory of sex discrimination," which was first articulated in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), remains cognizable under Title VII.

Defendant argues that in light of this controlling authority, the Court must dismiss plaintiff's Title VII sexual orientation discrimination claim. Plaintiff, in turn, has requested

2

leave to amend his complaint, presumably for the purpose of reframing his allegations in terms of gender stereotyping discrimination, as opposed to sexual orientation discrimination. Neither relief is appropriate. The law with respect to this legal question is clearly in a state of flux, and the Second Circuit, or perhaps the Supreme Court, may return to this question soon. In light of the evolving state of the law, dismissal of plaintiff's Title VII claim is improper.

In *Christiansen*, Chief Judge Katzmann wrote a concurring opinion, which was joined by Judge Margo Brodie (who was sitting on the Second Circuit by designation). *See Christiansen*, 852 F.3d at 201 (Katzmann, C.J., *concurring*). Judge Katzmann's majority concurrence persuasively outlines why sexual orientation discrimination is a form of sex discrimination and should therefore be cognizable under Title VII. *See id.* 201–06. Judge Katzmann articulated three distinct justifications for this conclusion, but his central point was that "sexual orientation discrimination is sex discrimination for the simple reason that such discrimination treats otherwise similarly–situated people differently solely because of their sex." This is because "sexual orientation cannot be defined or understood without reference to sex." *Id.* at 202.

Judge Katzmann also explained that sexual orientation discrimination is a form of sex discrimination because "such discrimination is inherently rooted in gender stereotypes." *Id.* at 205. In fact, the Second Circuit had previously suggested as much in *Dawson*, when it observed that "[s]tereotypical notions about how men and women should behave will often necessarily blur into ideas about heterosexuality and homosexuality." *Dawson*, 398 F.3d at 218 (alteration in original) (internal quotation marks omitted). In light of this prior observation, Judge Katzmann reasoned that "it is logically untenable for us to insist that this particular gender stereotype" – stereotyping on the basis of sexual orientation – "is outside of the gender stereotype discrimination prohibition articulated in *Price Waterhouse*." *Id.* at 205. Judge Katzmann concluded his concurrence by stating that "in the context of an appropriate case our

3

Court should consider reexamining the holding that sexual orientation discrimination claims are not cognizable under Title VII." *Id.* at 207. Revisiting this question was warranted "especially in light of the changing legal landscape that has taken shape in the nearly two decades since *Simonton* issued." *Id.* at 202.

On April 4, 2017, just a week after the Second Circuit issued its decision in *Christiansen*, the Seventh Circuit became the first Court of Appeals to unequivocally hold that "discrimination on the basis of sexual orientation is a form of sex discrimination" and therefore cognizable under Title VII. *Hively v. Ivy Tech Cmty. Coll. of Indiana*, 853 F.3d 339 (7th Cir. 2017) (en banc). Among other reasons, the Seventh Circuit made this ruling "to bring our law into conformity with the Supreme Court's teachings." *Id.* at 343. The Seventh Circuit was also compelled by "the common-sense reality that it is actually impossible to discriminate on the basis of sexual orientation without discriminating on the basis of sex." *Id.* at 351.

As discussed below in Section II of this opinion, plaintiff has adequately alleged that he was discriminated against because of his sexual orientation. Under the analysis set forth in both the Second Circuit's majority concurrence in *Christiansen* and the Seventh Circuit's *en banc* holding in *Hively*, because plaintiff has stated a claim for sexual orientation discrimination, "common sense" dictates that he has also stated a claim for gender stereotyping discrimination, which is cognizable under Title VII. The fact that plaintiff has framed his complaint in terms of sexual orientation discrimination and not gender stereotyping discrimination is immaterial. I decline to embrace an "illogical" and artificial distinction between gender stereotyping discrimination and sexual orientation discrimination, and in so doing, I join several other courts throughout the country. *See Videckis v. Pepperdine Univ.*, 150 F.Supp.3d 1151, 1159 (C.D. Cal. 2015) (collecting cases) ("Simply put, the line between sex discrimination and sexual orientation discrimination is 'difficult to draw' because that line does not exist, save as a lingering and faulty judicial construct."). For these reasons, and in light of the evolving state of the law on this

4

question, I hold that plaintiff's sexual orientation discrimination claim is cognizable under Title VII.

**II. Plaintiff Has Plausibly Alleged a Claim of Sexual Orientation Discrimination and Retaliation**

Defendant argues that even if plaintiff's sexual orientation discrimination claim is cognizable under Title VII, plaintiff has failed to plausibly state such a claim here. This argument fails. Plaintiff has adequately alleged claims for sexual orientation discrimination, hostile work environment, and retaliation. Plaintiff alleges that over a period of several years, Dr. David Heath, the President of SUNY Optometry, and Gui Albieri, a co-worker of plaintiff, made a range of discriminatory comments directed at plaintiff, that Dr. Heath excluded plaintiff from meetings and projects because of his sexual orientation, and that when plaintiff finally complained about this discrimination, his employment was terminated shortly thereafter.

For example, plaintiff alleges that beginning in 2011, Dr. Heath began making comments about plaintiff based on his sexual orientation, such as calling him "sensitive," "flamboyant," and "frenetic." Compl. ¶ 10. Plaintiff alleges that comments such as these were ongoing and continuous through his employment. In the spring of 2014, Albieri told plaintiff that "we are only work associates, not friends … you know [my wife] and I do not want our children to be around homosexuality … at least not in their formative years." Compl. ¶ 13. In September 2014, Dr. Heath told plaintiff that "separate but equal treatment of gay people might be best." Compl. ¶ 14. When Dr. Heath learned that plaintiff had ended a 17-year relationship with his domestic partner, he told plaintiff that "this marriage, or whatever you want to call it, is a distraction to the College." Compl. ¶ 15. In January 2015, plaintiff informed Dr. Heath that he had developed a chemical dependency that was caused in part by plaintiff's reaction to what he perceived as a hostile work environment. Dr. Heath told plaintiff that "AIDS had to be managed, well manage this yourself," and commented that substance abuse was "common" in the gay

5

community. Compl. ¶ 15. Beginning in the spring of 2015, plaintiff alleges that because of his sexual orientation, Dr. Heath began excluding plaintiff from meetings, ignored plaintiff's proposal's, and was dismissive of plaintiff's contributions. Compl. ¶ 16. In April 2015, Dr. Heath compared homosexuality to an eye condition that Dr. Heath suffered from, and claimed that both were "genetic misfires" and that "the question becomes, and certainly the answer is yes, they are being treated with rigorous therapy." Compl. ¶ 17. Also in 2015, Albieri told plaintiff that "you make a good salary ... but your team [gays] doesn't have kids. You have more than you need. We should switch salaries." Compl. ¶ 19. The Complaint states additional allegations of discriminatory conduct along these lines.

On September 2, 2015, plaintiff formally complained to Dr. Heath, and stated that Dr. Heath was discriminating against plaintiff on the basis of his sexual orientation and subjecting him to a hostile work environment. Compl. ¶ 22. Plaintiff also made this complaint to Doug Schading of the College of Optometry. Schading was dismissive of plaintiff's complaint and told plaintiff to "keep me posted but this is between you and [Dr. Heath]." Compl. ¶ 23. On October 15, 2015, plaintiff requested a leave of absence from his employment, but that request was denied. Plaintiff's leave was ultimately approved, but a few days later he received an email notifying him that his employment had been terminated. Compl. ¶ 26. On October 22, 2015, Schading reached out to plaintiff to "arrive at a mutually agreeable transition from his employment," but no separation agreement was reached. Plaintiff's employment was terminated by letter, effective November 20, 2015. Compl. ¶ 26-27.

Based on these allegations, plaintiff has sufficiently stated claims for discrimination, hostile work environment, and retaliation. *See Littlejohn v. City of N.Y.*, 795 F.3d 297 (2d Cir. 2015).

community. Compl. ¶ 15. Beginning in the spring of 2015, plaintiff alleges that because of his sexual orientation, Dr. Heath began excluding plaintiff from meetings, ignored plaintiff's proposal's, and was dismissive of plaintiff's contributions. Compl. ¶ 16. In April 2015, Dr. Heath compared homosexuality to an eye condition that Dr. Heath suffered from, and claimed that both were "genetic misfires" and that "the question becomes, and certainly the answer is yes, they are being treated with rigorous therapy." Compl. ¶ 17. Also in 2015, Albieri told plaintiff that "you make a good salary ... but your team [gays] doesn't have kids. You have more than you need. We should switch salaries." Compl. ¶ 19. The Complaint states additional allegations of discriminatory conduct along these lines.

On September 2, 2015, plaintiff formally complained to Dr. Heath, and stated that Dr. Heath was discriminating against plaintiff on the basis of his sexual orientation and subjecting him to a hostile work environment. Compl. ¶ 22. Plaintiff also made this complaint to Doug Schading of the College of Optometry. Schading was dismissive of plaintiff's complaint and told plaintiff to "keep me posted but this is between you and [Dr. Heath]." Compl. ¶ 23. On October 15, 2015, plaintiff requested a leave of absence from his employment, but that request was denied. Plaintiff's leave was ultimately approved, but a few days later he received an email notifying him that his employment had been terminated. Compl. ¶ 26. On October 22, 2015, Schading reached out to plaintiff to "arrive at a mutually agreeable transition from his employment," but no separation agreement was reached. Plaintiff's employment was terminated by letter, effective November 20, 2015. Compl. ¶ 26-27.

Based on these allegations, plaintiff has sufficiently stated claims for discrimination, hostile work environment, and retaliation. *See Littlejohn v. City of N.Y.*, 795 F.3d 297 (2d Cir. 2015).

### III. Plaintiff's Allegations Are Not Barred by the Statute of Limitations

Title VII claims must be filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the discriminatory act complained of. *Williams v. N.Y Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006). Defendant argues that because plaintiff did not file an administrative complaint with the EEOC until February 24, 2016, any allegations of discriminatory conduct that pre-date April 30, 2015 are untimely. However, the statute of limitations does not "bar an employee from using the prior acts as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Coger v. Connecticut Dep't of Pub. Safety*, 143 F. App'x 372, 374 (2d Cir. 2005) ("Plaintiff argues, and we agree, that [*Morgan*] requires the consideration of facts, related to claims now untimely, as background to timely claims."). Additionally, conduct that occurred outside the limitations period is relevant to plaintiff's hostile work environment claim. "A claim of hostile work environment is timely so long as one act contributing to the claim occurred within the statutory period; if it did, 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) (quoting *Morgan*, 536 U.S. at 117). Thus, although plaintiff may not recover for "discrete acts" that occurred outside the limitations period, that conduct is still relevant to his claims and is properly included in the Complaint.

### IV. Plaintiff's Title IX Claim is Dismissed

Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C § 1681(a). Plaintiff was an employee, not a student, of SUNY Optometry, and his claim is quintessentially one for employment discrimination. Title VII imposes an administrative exhaustion requirement that is absent from Title IX. As many courts have previously held, allowing employees to sue

7

for discrimination under Title IX would enable many federal employees to bypass the remedial process that Congress established under Title VII. Accordingly, I join many other courts in this district, and hold that employment discrimination claims are not actionable under Title IX. *See Burrell v. City Univ. of N.Y.*, 995 F. Supp. 398, 408 (S.D.N.Y. 1998) ("[T]he remedies of Title IX are limited to student plaintiffs, and Title VII is meant to offer the exclusive remedy for employment discrimination based on sex."); *Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995) ("We are not persuaded that Congress intended that Title IX offer a bypass of the remedial process of Title VII. We hold that Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions."); *Vega v. State Univ. of N.Y. Bd. of Trustees*, 2000 WL 381430, at *3 (S.D.N.Y. Apr. 13, 2000) ("This Court agrees with the Fifth Circuit and numerous district courts that have held that Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex, and limiting money damages under Title IX to student plaintiffs."). Defendant's motion to dismiss plaintiff's Title IX claim is granted.

## CONCLUSION

For the reasons stated above, defendant's motion is granted in part and denied in part. The clerk shall terminate the motion and the related letter-motion (Dkt. Nos. 27, 35).

Plaintiff shall file an amended complaint in accordance with this opinion by May 18, 2017, and defendant shall answer by May 29, 2017. A status conference will be held on June 16, 2017, at 10:00 a.m., at which the parties shall propose a discovery plan.

SO ORDERED.

Dated: May 3, 2017
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge